UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

DENNIS D. LINEHAN,

Petitioner,

v.

FRANK MILCZARK

Respondent.

Civil No. 00-2635 DSD/AJB

**REPORT AND RECOMMENDATION**

Eric S. Janus, St. Paul, MN and Lisbeth J. Nudell, Minneapolis, MN, on behalf of Petitioner.

Angela M. Helseth, Assistant Attorney General for the State of MN, and Mark Nathan Lystig, Assistant Attorney for Ramsey County, MN, on behalf of Respondent.

## I. INTRODUCTION

Petitioner is committed as a Sexually Dangerous Person under the Minnesota Commitment and Treatment Act, MINN. STAT. §§ 253B.01-.23 (2000). This matter is before the Court on Petitioner's application for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For reasons set forth below the Court recommends that the petition for writ of habeas corpus be denied.

## II. BACKGROUND

In May 1992, the State of Minnesota sought for Petitioner's commitment under the Psychopathic Personality Control Act (PP Act), MINN. STAT. §§ 526.09-.11 (1992) (repealed

FILED AUG - 9 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD_______
DEPUTY CLERK_______

1994). After an initial commitment and sixty-day review hearing,[1] the district court committed Petitioner for an indefinite period. The Minnesota Court of Appeals upheld the decision. *In re* Linehan, 503 N.W.2d 142 (Minn. App. Ct. 1993). The Supreme Court of Minnesota reversed, concluding the state failed to present clear and convincing evidence that Petitioner had an utter lack of power to control his sexual impulses.[2] *In re* Linehan, 518 N.W.2d 609, 614 (Minn. 1994) (hereinafter Linehan I).

In response to Petitioner's release, the Minnesota Legislature, in special session, created "[a]n act relating to [the] civil commitment of sexually dangerous persons," commonly known as the Sexually Dangerous Persons Act (SDP Act or Act). 1994 (First Special Session) Minn. Laws Ch. 1, Art. 1, Sec. 3-4. (codified as amended at MINN. STAT. §§ 253B.02, subd. 18c & 253B.185 (2000)).

As amended, the SDP Act defines a sexually dangerous person as follows:

> (a) A "sexually dangerous person" means a person who:
> (1) has engaged in a course of harmful sexual conduct as defined in subdivision 7a;
> (2) has manifested a sexual, personality, or other mental disorder or dysfunction; and
> (3) as a result, is likely to engage in acts of harmful sexual conduct as defined in subdivision 7a.
> (b) For purposes of this provision, it is not necessary to prove that the person has an inability to control the person's sexual impulses.

MINN. STAT. § 253B.02, subd. 18c (2000).

---

[1]The PP Act provided, "If, upon completion of the hearing and consideration of the record, the court finds the proposed patient has a psychopathic personality, the court shall commit such person to a public hospital or a private hospital consenting to receive the person, subject to a mandatory review by the head of the hospital within 60 days from the date of the order as provided for in chapter 253B for persons found to be mentally ill and dangerous to the public." MINN. STAT. § 526.10, subd. 1 (1992) (repealed 1994).

[2]The PP Act, as interpreted by the Minnesota Supreme Court, provided that before being committed as a Psychopathic Personality, a person must display an "utter lack of power to control their sexual impulses." State *ex rel.* Pearson v. Probate Court of Ramsey County, 287 N.W. 297, 302 (1939), *aff'd*, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940).

The State sought to have Petitioner committed under the newly enacted SDP Act. Petitioner moved to dismiss the commitment petition, arguing that the SDP Act violated several protections of both the United States and Minnesota Constitutions. Appendix to Respondent's Answer at R.A. 8-9. The district court heard and rejected Petitioner's constitutional challenges. Id. at R.A. 10-31.

Thereafter, the district court held an initial commitment hearing. The district court first found, by clear and convincing evidence, that Petitioner had engaged in a course of harmful sexual conduct including sexual assault, rape, and taking indecent liberties with a four-year-old child. Id. at R.A. 36-40. Then, the district court found that Petitioner suffered from an Axis II diagnosis of Antisocial Personality Disorder and that this disorder satisfies the Act's requirement that an SDP detainee suffer from a "personality or other mental disorder." Id. at R.A. 40-6. Lastly, the district court found that it was highly probable that Petitioner would engage in future acts of harmful sexual conduct. Id. at R.A. 46-57. Therefore, the district court determined Petitioner to be a Sexually Dangerous Person and committed him for a sixty-day evaluation. Id. at R.A. 33-4. After the statutorily mandated review hearing,[3] the district court found that the requirements for commitment under the SDP Act continued to be met and indefinitely committed Petitioner as a Sexually Dangerous Person. Id. at R.A. 58-9.

The Minnesota Court of Appeals affirmed the district court's decision. *In re* Linehan, 544 N.W.2d 308 (Minn. Ct. App. 1996). On appeal to the Supreme Court of Minnesota,

---

[3]After the initial commitment, a treatment report must be completed and filed with the committing court. Thereafter, the committing court must hold a review hearing to determine if the detainee should remain committed. MINN. STAT. 253B.18, subd. 2 (2000).

Petitioner again argued that the SDP Act violated various protections of both the United States and Minnesota Constitutions. *In re* Linehan, 557 N.W.2d 171, 174-75 (Minn. 1996) (hereinafter Linehan III).[4] The Supreme Court of Minnesota rejected Petitioner's constitutional challenges, and in doing so, specifically acknowledged that the SDP Act did not require that the proposed detainee have an inability to control their sexual impulses. Id. at 179 ("The SDP Act is a departure from the Psychopathic Personality Act . . . . First, commitment under the SDP Act does not require proof that the proposed patient has an inability to control his or her sexual impulses.").

After Linehan III, the United States Supreme Court decided Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). Hendricks involved Kansas' Sexually Violent Predator Act (Kansas Act), which provided procedures for the commitment of "sexually violent predators," defined as: "any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which make the person likely to engage in the predatory act of sexual violence." Id. at 350-52, 2076-77 (internal quotations omitted). The Hendricks Court was faced with, *inter alia*, a substantive due process challenge to the Kansas Act. The Court upheld the constitutionality of the Kansas Act, and in doing so, used language which *arguably* requires civil commitment statutes to possess a volitional impairment element in order to meet substantive due process standards. For example, the Court wrote:

---

[4] In a separate opinion, the Minnesota Supreme Court upheld Petitioner's sixty-day review hearing. *In re* Linehan, 557 N.W.2d 167 (Minn. 1996) (hereinafter Linehan II).

> The Kansas Act is plainly of a kind with these other civil commitment statutes [that have been upheld]: It requires a finding of future dangerousness, and then links that finding to the existence of a "mental abnormality" or "personality disorder" *that makes it difficult, if not impossible, for the person to control his dangerous behavior*.

Id. at 358, 2080 (emphasis added).

The United States Supreme Court granted writ of *certiorari*, vacated the judgment in Linehan III, and remanded it for reconsideration in light of the Hendricks decision. Linehan v. Minnesota, 522 U.S. 1011, 118 S.Ct. 596, 139 L.Ed.2d 486 (1997).

On remand, the Minnesota Supreme Court interpreted the Hendricks decision to require "some lack of volitional control . . . to narrow the scope of civil commitment statutes." *In re* Linehan, 594 N.W.2d 867, 873 (Minn. 1999) (hereinafter Linehan IV). The Minnesota Supreme Court proceeded to assess the SDP Act in light of Hendricks. The court noted that, for the most part, the Kansas Act (reviewed in Hendricks) and the SDP Act were nearly the same: "Like the Kansas Act, the Minnesota SDP Act requires evidence of past harmful sexual behavior and a present qualifying disorder or dysfunction that makes future dangerous conduct highly likely if the person is not incapacitated." Id. at 874. The court recognized, however, that there was a distinct difference between the two acts:

> However, unlike the Kansas Act, the Minnesota Act explicitly states that "it is not necessary to prove that the person has an inability to control the person's sexual impulses." Minn. Stat. 253B.02, subd. 18c(b). This section calls into question whether the Minnesota Act is outside the embrace of *Hendricks'* reasoning.

Id. (emphasis in original). Then, the Minnesota Supreme Court proceeded to construe MINN. STAT. 253B.02, subd. 18c(b). The court concluded that the Minnesota Legislature included this

provision merely as a means to back away from the utter inability standard of the PP Act,[5] but not as a means to completely eliminate a volitional impairment requirement. Id. at 875. The court went on to summarize its final interpretation of the SDP Act:

> We now clarify that the SDP Act allows civil commitment of sexually dangerous persons who have engaged in a prior course of sexually harmful behavior and whose present disorder or dysfunction does not allow them to *adequately control* their sexual impulses, making it highly likely that they will engage in harmful sexual acts in the future.

Id. at 876 (emphasis added).

In light of its interpretation of the SDP Act, the Minnesota Supreme Court reviewed the district court's records and concluded there was clear and convincing evidence that Petitioner lacked *adequate control* over his harmful sexual impulses. Therefore, the court reaffirmed its Linehan III decision and affirmed the Minnesota Court of Appeals decision holding that the SDP Act is constitutional and that Petitioner's commitment was appropriate. Id. at 878.

Petitioner now seeks habeas corpus relief, pursuant to 28 U.S.C. § 2254. His habeas petition presents several claims. First and foremost, Petitioner argues that the SDP Act violates substantive due process because it does not adequately distinguish between those persons who should be civilly committed and those who should be dealt with in the criminal justice system. Next, Petitioner argues that the SDP Act does not provide proper procedures and evidentiary standards. Thirdly, Petitioner argues that the SDP Act violates *ex post facto* and double jeopardy protections. Lastly, Petitioner argues that the "lack of adequate control" standard set forth in

---

[5]As noted in footnote two above, the PP Act, as interpreted by the Minnesota Supreme Court, provided that before being committed as a Psychopathic Personality, a person must display an "utter lack of power to control their sexual impulses." State *ex rel.* Pearson v. Probate Court of Ramsey County, 287 N.W. 297, 302 (1939), *aff'd*, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940).

Linehan IV was an unforeseeable change in law and–in violation of his procedural due process rights–he was deprived of an evidentiary hearing under this "new" standard. Because Petitioner's last claim raises issues of exhaustion, the Court addresses it first.

## III. DISCUSSION

### A. STANDARD OF REVIEW

A federal court may not grant habeas corpus relief to a person in state custody unless the confinement runs "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1) (West Supp. 2001).

### B. PROCEDURAL DUE PROCESS

As noted by the Minnesota Supreme Court in Linehan III, the SDP Act, on its face, provides that the state need not make *any* showing of volitional impairment. Linehan III, 557 N.W.2d at179. In Linehan IV, however, the Minnesota Supreme Court interpreted the SDP Act to require the state to show a lack of *adequate control*. Linehan IV, 594 N.W.2d at 876. After setting forth its interpretation of the SDP Act, the Linehan IV court did not order a new evidentiary hearing. Instead, as noted above, the court reviewed the district court's records and concluded there was clear and convincing evidence that Petitioner lacked adequate control over his harmful sexual impulses. Id. at 878.

In his habeas petition, Petitioner argues that the "lack of adequate control" standard set forth in Linehan IV was an unforeseeable change in law. Petitioner complains that he was never given an opportunity to present evidence or conduct cross-examination on the issue of volitional impairment. Petitioner contends that this deprived him of procedural due process. Respondent

argues that Petitioner's procedural due process claim has not been exhausted as required by 28 U.S.C. 2254(b)(1)(A).

A claim is considered unexhausted when it has not been fairly presented to the state courts *and* there presently exists a state remedy. Burns v. Gammon, 173 F.3d 1089, 1091-92 (8th Cir. 1999). A claim has been fairly presented when the highest state court has had a fair opportunity to fully address it. Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993). However:

> It is not enough that all the facts necessary to support a federal claim are before the state court or that the petitioner asserted a similar state-law claim. The petitioner must "refer to a 'specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'"

Id. (citation omitted).

In his reply brief to the Minnesota Supreme Court in Linehan IV, Petitioner set forth a lack-of-notice argument. Appendix to Respondent's Answer at R.A. 207-09. In this argument, however, there is virtually no language indicating that Petitioner was making a federal constitutional claim. The Court concludes that Petitioner has not fairly presented his procedural due process claim to the courts of Minnesota.

As noted above, the Court must next determine whether any state court remedies remain available to Petitioner. Although he does not speak with specificity on this matter, Respondent clearly takes the position that state remedies still exist.[6] The Court agrees. For example, Minnesota civil detainees may challenge the constitutionality of their civil commitment through

[6] If there were no state court remedies available to Petitioner with respect to his procedural due process claim, said claim would be procedurally defaulted. Burns, 173 F.3d at 1092. Respondent does not take this position. Instead, Respondent argues that Petitioner has presented a "mixed petition," which must be dismissed in its entirety.

Minnesota's habeas corpus provisions. Joelson v. O'Keefe, 594 N.W.2d 905, 908 (Minn. App. Ct. 1999).

Therefore, the Court concludes that Petitioner has presented a "mixed petition," as discussed in Rose v. Lundy, 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982) ("[W]e hold that a district court must dismiss such "mixed petitions," leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court."). In interpreting the Rose decision, the Eighth Circuit stated that, except in cases not relevant here, "a mixed petition must be dismissed or the petitioner must elect to proceed on only the exhausted claims." Victor v. Hopkins, 90 F.3d 276, 282 (8th Cir. 1996). Here, Petitioner asks that–in the event the Court finds his procedural due process claim to be unexhausted–he be granted leave to amend his petition. The Court concludes that granting this request is consistent with the Rose decision. However, Petitioner need not make a formal amendment to his petition. This would waste time and effort. The Court trusts that, if given the opportunity, Petitioner would amend his petition to eliminate the procedural due process claim. Therefore, the Court proceeds as if it has already been done.

### C. SUBSTANTIVE DUE PROCESS

Petitioner argues that the SDP Act violates substantive due process because it does not adequately distinguish between those persons who should be civilly committed and those who should be dealt with in the criminal justice system. In addressing this claim, the Court is concerned with two basic issues. The first issue requires the Court to ask, "What does the SDP Act provide?" The second issue is whether an adjudication under the SDP Act results in a commitment that is "contrary to, or involve[s] an unreasonable application of clearly established

Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1) (West Supp. 2001).

In addressing the first question, the Court is bound to accept the interpretation of state law by the highest court of the state. Montana v. Egelhoff, 518 U.S. 37, 72, 116 S.Ct. 2013, 2031, 135 L.Ed.2d 361 (1996). Here, the Minnesota Supreme Court has interpreted the SDP Act as follows:

> We now clarify that the SDP Act allows civil commitment of sexually dangerous persons who have engaged in a prior course of sexually harmful behavior and whose present disorder or dysfunction does not allow them to adequately control their sexual impulses, making it highly likely that they will engage in harmful sexual acts in the future.

Linehan IV, 594 N.W.2d at 876.

Petitioner argues that this interpretation does not incorporate the substantive due process standards set forth in Hendricks and is therefore "contrary to" Federal law. More specifically, Petitioner contends that Hendricks requires civil commitment statutes to contain a volitional impairment element. For the sake of argument, the Court accepts this proposition because the SDP Act, as interpreted in Linehan IV, clearly contains a volitional impairment element, namely the "lack of adequate control" standard. Petitioner argues, however, that the "lack of adequate control" standard does not satisfy the substantive due process standards set forth in Hendricks. In other words, Petitioner contends that the *level* of volitional impairment, required by Hendricks, provides a narrower class of persons eligible for civil commitment than does the Minnesota Supreme Court's interpretation of the SDP Act. The Court disagrees.

In upholding the Kansas Act, the Hendricks Court wrote:

> The Kansas Act is plainly of a kind with these other civil commitment statutes: It requires a finding of future dangerousness, and then links that finding to the existence of a "mental abnormality" or "personality disorder" that makes it *difficult*, if not impossible, for the person to control his dangerous behavior.

Hendricks, 521 U.S. at 368, 117 S.Ct. at 2080 (emphasis added). This language clearly allows for the commitment of persons who merely find it "difficult" (as opposed to "impossible") to control their dangerousness. The Court finds no significant semantic difference between a "difficult to control" standard and a "lack of adequate control" standard.[7]

If Hendricks must be interpreted to require a volitional impairment element, as Petitioner insists, then it must also be interpreted to allow for a "lack of adequate control" standard. The Court concludes that commitment under the SDP Act is not "contrary to" the dictates of Hendricks.

## D. PROCEDURAL PROTECTIONS

Petitioner argues that the SDP Act does not provide adequate procedural standards. First, Petitioner suggests that the SDP should require proof beyond a reasonable doubt, instead of "clear and convincing evidence."[8] This argument is foreclosed by Addington v. Texas, 441 U.S. 418, 430-31, 99 S.Ct. 1804, 1811-12, 60 L.Ed.2d 323 (1979).

Next, Petitioner suggests that the Act should provide for a jury trial. In support, Petitioner provides no argument or case law. It unnecessary to discuss the matter other than to say that the Court is persuaded by the Ninth Circuit's analysis in U.S. v. Sahhar, 917 F.2d 1197,

---

[7]It is worth noting that, later in the Hendricks opinion, the Court wrote, "Those persons committed under the [Kansas] Act are, by definition, suffering from a 'mental abnormality' or a 'personality disorder' that prevents them from exercising *adequate control* over their behavior." Hendricks, 521 U.S. at 362, 117 S.Ct. at 2082 (emphasis added).

[8]"If the court finds by clear and convincing evidence that the proposed patient is mentally ill and dangerous to the public, it shall commit the person." MINN. STAT. § 253B.18, subd. 1(a) (2000).

1204-07 (9th Cir. 1990) (concluding that, in civil commitment proceedings, there is no due process right or Sixth Amendment right to a jury).

Petitioner complains because confinement under the SDP Act is indeterminate. This understates the procedural safeguards under the Act. Although a commitment under the Act is "for an indeterminate period of time," MINN. STAT. § 253B.18, subd. 3 (2000), an SDP detainee is not left without avenues of relief. Once committed under the Act, a person may petition for discharge at any time, as long as six months have elapsed following the commitment or following the final disposition of any prior discharge petition. Id. at subd. 5(a). In addition, the medical director of the detainee's treatment program may petition for discharge at *any* time. Id. It is also worth noting that committed persons may challenge the constitutionality of their civil commitment through Minnesota's habeas corpus provisions. Joelson v. O'Keefe, 594 N.W.2d 905, 908 (Minn. App. Ct. 1999). Petitioner does not explain, nor has the Court ascertained, why these procedural safeguards are inadequate.

Petitioner also complains because, when an SDP detainee seeks release, they bear the burden of presenting evidence. This, too, understates the procedural safeguards under the SDP Act. When an SDP detainee seeks discharge, they must first petition the Commissioner of Human Services. MINN. STAT. § 253B.18, subd. 5(a) (2000). If the Commissioner of Human Services denies the petition, the detainee then may petition a judicial appeal panel for rehearing and reconsideration of the Commissioner's decision. MINN. STAT. § 253B.19, subd. 2 (2000). On this appeal, although the petitioning party bears the burden of bringing forth *prima facie* evidence, the party opposing discharge bears the burden of proof by clear and convincing

evidence. Id. Once again, Petitioner does not explain why these procedural safeguards are inadequate.

Lastly, Petitioner complains that the discharge criteria under the SDP Act are substantially lower than the initial commitment standards. The discharge criteria are set forth in MINN. STAT. § 253B.18, subd. 15 (2000). The Minnesota Supreme Court has interpreted this provision to mean that, in order to continue an SDP detainee's commitment, the state must demonstrate by clear and convincing evidence that the person both remains dangerous to the public *and* retains a disorder. Call v. Gomez, 535 N.W.2d 312, 319 (Minn. 1995). In light of this interpretation, the Court rejects Petitioner's argument based upon Foucha v. Louisiana, 504 U.S. 71, 80-3, 112 S.Ct. 1780, 1786-87, 118 L.Ed.2d 437 (1992) (concluding that Louisiana could not continue Foucha's commitment because the state had not shown by clear and convincing evidence that he was both dangerous *and* mentally ill).

**E. *EX POST FACTO* AND DOUBLE JEOPARDY**

Petitioner argues that the SDP Act violates the Double Jeopardy Clause of the Federal Constitution. The Double Jeopardy Clause, as interpreted, precludes a second criminal prosecution, and a second punishment, for the same offense. Hendricks, 521 U.S. at 369, 117 S.Ct. at 2085. Therefore, if a statute is civil in nature, and commitment thereunder is not tantamount to "punishment," it does not violate the Double Jeopardy Clause even if confinement follows a prison term. Id. at 369-70, 2086.

Whether a proceeding is criminal or civil is initially a matter of statutory construction and when making this determination the Court ordinarily defers to a legislature's stated intent. Id. at 361, 2081-82. Here, Minnesota's intent to create a civil proceeding is apparent by its placement

of the SDP Act within the Minnesota Commitment and Treatment Act,[9] as opposed to the criminal code. In addition, in the preamble to the legislation establishing the SDP Act, the legislature wrote, "An act relating to *civil* commitment of sexually dangerous persons . . . ." 1994 (First Special Session) Minn. Laws Ch. 1 (emphasis added).

The Court concludes that the Minnesota Legislature clearly stated an intent to create a civil commitment scheme when it created the SDP Act. The Court will not reject this stated intent unless Petitioner presents "the clearest proof" that "the statutory scheme [is] so punitive either in purpose or effect as to negate that intention." U.S. v. Ward, 448 U.S. 242, 249, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980).

As evidence of the SDP Act's punitive nature, Petitioner points out that, when enacted, the SDP Act disenfranchised those committed under it. 1994 (First Special Session) Minn. Laws Ch. 1, Art. 2, Sec. 20 (codified at MINN. STAT. § 201.15, subd. 1 (1996 & Supp. 1997).[10] This narrow argument is not entirely without merit. The Court does not see a clear justification for depriving an SDP detainee of the right to vote. This is especially true considering that, at the time the SDP Act was created, most other Minnesota civil detainees did not lose the right to vote until they had been adjudicated incompetent. MINN. STAT. §§ 253B.23, subd. 2(a) & 201.15, subd. 1 (1994). Having said that, however, the Court does not believe that the disenfranchisement provision of the original SDP Act, standing alone, is "the clearest proof" of the Act's punitive nature.

---

[9]Known then as the Minnesota Commitment Act of 1982.

[10]In 1998, SDP detainees were given the right to vote so long as their detention was not based in whole or in part upon conduct that supported a prior criminal conviction. 1998 Minn. Laws Ch. 376, Sec. 1 & 5. In 1999, voting rights were restored to all SDP detainees. 1999 Minn. Laws Ch 62, Sec. 2.

Next, Petitioner points out several examples where SDP detainees are handled differently than other Minnesota civil detainees. Petitioner argues that this is evidence of the Act's punitive nature. Petitioner's argument rests upon the following language from Hendricks: "Where the State has . . . directed that confined persons be segregated from the general prison population and *afforded the same status as others who have been civilly committed* . . . we cannot say that it acted with punitive intent." Hendricks, 521 U.S. at 368-69, 117 S.Ct. at 2085 (emphasis added). The Court rejects Petitioner's argument.

Although SDP detainees are handled differently than *some* other Minnesota civil detainees, these disparities are not glaring and do not amount to punishment. Petitioner cannot dispute that the various categories of Minnesota civil detainees possess significantly different characteristics.[11] The Court cannot say that the slight disparities in treatment are not rationally related to those differing characteristics. The Court does not read Hendricks to require the exact same handling of every person under a civil commitment scheme.

Lastly, in considering whether the SDP Act constitutes a punitive scheme, the Court notes the following characteristics of confinement under the Act:

- Evidence of past conduct is not used to punish, but is used to show a person's mental condition and to predict future behavior.
- A criminal conviction is not a prerequisite for confinement.
- Commitment is predicated upon a "sexual, personality, or other mental disorder or dysfunction," as opposed to a person's criminal intent.

---

[11] MINN. STAT. 253B.02, subd. 2 (2000) (chemically dependant), Id. at subd. 13 (mentally ill), Id. at subd. 14 (mentally retarded), Id. at subd. 18b (sexual psychopathic personality), Id. at subd. 18c (sexually dangerous).

- Persons are committed because of a disorder that prevents them from exercising adequate control and therefore the SDP Act does not appear to be intended as a deterrent.
- The duration of confinement is linked to the existence of a person's mental disorder *and* dangerousness. Call v. Gomez, 535 N.W.2d 312, 319 (Minn. 1995).
- A committed person is not subject to punitive conditions. They are confined in a treatment facility, as opposed to a prison. MINN. STAT. § 253B.18, subd. 1(a) (2000). A treatment facility is defined as "a hospital, community mental health center, or other treatment provider qualified to provide care and treatment for mentally ill, mentally retarded, or chemically dependent persons. MINN. STAT. 253B.02, subd. 19 (2000).

As discussed in Hendricks, confinement under the Kansas Act had the same (or nearly the same) characteristics as those just listed. Hendricks, 521 U.S. at 362-68, 117 S.Ct. 2082-85. The Court concludes that Petitioner has failed to show "the clearest proof" that the SDP Act constitutes a punitive scheme. Therefore, the Court rejects Petitioner double jeopardy claim.

Petitioner also argues that the SDP Act violates the *Ex Post Facto* Clause of the Federal Constitution. As just demonstrated, however, the SDP Act does not impose punishment. Therefore, no *ex post facto* concerns are raised. Id. at 370-71, 2086.

## IV. RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Petitioner's procedural due process claim be found unexhausted;
2. Petitioner's conditional motion for leave to amend be granted;

3. The Petition be treated as if it had already been amended to eliminate the procedural due process claim;

4. Petitioner's motion for summary judgment on his petition for writ of habeas corpus be denied;

5. This action be dismissed with prejudice.

Dated August 8, 2001

ARTHUR J. BOYLAN
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of the Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500